**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-042**

**Filing Date: March 22, 2011**

**Docket No. 30,190**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**BERTHA GURULE,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth Martinez, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jeff Romero
Albuquerque, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**    Defendant Bertha Gurule appeals her conviction for driving under the influence of intoxicating liquor (DWI), contrary to NMSA 1978, Section 66-8-102(A) (2005) (amended 2010), under the impaired to the slightest degree standard. We consider Defendant's arguments that (1) DWI, contrary to Subsection (A), is not a strict liability crime; (2) even if DWI contrary to Subsection (A) is a strict liability crime, an involuntary intoxication defense is nonetheless available; and (3) there was insufficient evidence that Defendant was under the influence of over-the-counter cold medication. We hold that DWI, contrary to

1

Subsection (A), is a strict liability crime and, as a result, an involuntary intoxication defense is not available. We therefore do not reach Defendant's sufficiency of the evidence argument. Accordingly, we affirm Defendant's conviction.

**BACKGROUND**

{2}     On the morning of March 7, 2007, Defendant began to feel ill with either a cold or the flu while at work. Her symptoms appeared to worsen throughout the day and, at 1:45 p.m., her manager sent her home. She informed her manager that she had a doctor's appointment the next day at 9:00 or 10:00 a.m. and would not be available to work. The next day, March 8, at around 6:00 p.m., Defendant visited her mother and two sisters, Rosa and Connie, at her mother's home. Defendant still exhibited signs of illness and laid down on her mother's couch. At some point, Rosa told Defendant to go outside and get some fresh air.

{3}     While Defendant was outside, Rosa made "tea" for Defendant to clear up her chest congestion and sinuses. The "tea" was a "hot toddy," which Rosa made from water, lime juice, lime, honey, oregano, and more than one shot of bourbon. Defendant consumed the tea and testified that she was unaware that it contained alcohol and could not taste the alcohol. Defendant also testified that she took cold medication shortly after drinking the tea.

{4}     After Defendant consumed the tea, Connie received a phone call from her daughter informing her that Connie's granddaughter was in the hospital. Defendant drove Connie to the hospital between 7:30 and 8:00 p.m. While Defendant was returning home from the hospital, Officer Steve Hindi observed that Defendant was speeding and that she failed to maintain her lane. As a result, Officer Hindi initiated a traffic stop of Defendant. Defendant told Officer Hindi that she did not consume alcohol. Officer Bret White took over the investigation and observed that Defendant had bloodshot, watery eyes and a strong odor of alcohol. Defendant told Officer White that the alcohol odor was from a spray that she was using to treat her sore throat. After administering field sobriety tests, which Defendant failed, Officer White arrested Defendant for driving under the influence of intoxicating liquor.

{5}     After a bench trial, the metropolitan court found Defendant guilty of DWI, contrary to Subsection (A), under the impaired to the slightest degree standard. In finding Defendant guilty, the metropolitan court held that DWI under Subsection (A) is a strict liability crime. The metropolitan court also rejected Defendant's tendered jury instruction on involuntary intoxication, UJI 14-5106 NMRA, finding that since DWI is a strict liability crime, involuntary intoxication is inapplicable as a defense. Defendant appealed to the district court, arguing that the metropolitan court erred in (1) holding that involuntary intoxication is not a valid defense to DWI, and (2) finding that Defendant was under the influence of over-the-counter cold medication. The district court affirmed Defendant's convictions. Defendant filed a timely appeal to this Court.

2

**STRICT LIABILITY**

**{6}** Defendant argues that the crime of DWI under Subsection (A) requires the general criminal intent to assume the risk of possible intoxication and that therefore the metropolitan court erred in finding that it is a strict liability crime. Whether conviction under Subsection (A) requires a showing of intent is a question of statutory construction and is, therefore, a legal determination that we review de novo. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (holding that statutory construction is a strictly legal determination that is reviewed de novo). "The standard for determining whether a statute is a strict liability statute involves ascertaining whether there is a clear legislative intent that the act does not require any degree of mens rea." *State v. Harrison*, 115 N.M. 73, 77, 846 P.2d 1082, 1086 (Ct. App. 1992).

**{7}** Subsection (A) provides that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." In order to convict under Subsection (A), a court must find that the defendant "was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the driver and the public" as a result of drinking the liquor. *State v. Pickett*, 2009-NMCA-077, ¶ 1, 146 N.M. 655, 213 P.3d 805 (alteration omitted) (internal quotation marks and citation omitted), *cert. denied*, 2009-NMCERT-006, 146 N.M. 734, 215 P.3d 43. This standard is known as the "impaired to the slightest degree" standard. *Id.* ¶ 6 (internal quotation marks and citation omitted). The metropolitan court found Defendant guilty of violating the impaired to the slightest degree standard under Subsection (A) as opposed to the per se standard of Subsection (C). Under the per se standard of Subsection (C), it is unlawful to drive with a blood alcohol content (BAC) of .08 or more, regardless of whether impaired driving was shown. *Pickett*, 2009-NMCA-077, ¶ 6.

**{8}** Defendant primarily argues that this Court, in *State v. Dutchover*, 85 N.M. 72, 509 P.2d 264 (Ct. App. 1973), held that DWI, under the impaired to the slightest degree standard, requires the defendant to assume the risk of intoxication in order to convict and, therefore, the metropolitan court erred in finding that DWI is a strict liability crime in this case. In *Dutchover*, the defendant was convicted of vehicular homicide and admitted that he was intoxicated. *Id.* at 73-74, 509 P.2d at 265-266. The defendant's argument was that the state failed to prove the requisite criminal intent for vehicular homicide, not DWI. *Id.* at 75, 509 P.2d at 267. This Court held that (1) the voluntary act of becoming under the influence, combined with (2) the voluntary act of driving, was malum in se and, therefore, was sufficient to satisfy the criminal intent element necessary for conviction for vehicular homicide. *See id.* *Dutchover* did not require this Court to determine whether criminal intent was necessary for conviction of DWI under the impaired to the slightest degree standard.

**{9}** While this Court has not addressed whether DWI under the impaired to the slightest degree standard of Subsection (A) is a strict liability crime, we have previously held that a violation of the per se standard of Subsection (C) is a strict liability crime. *See Harrison*,

3

115 N.M. at 78, 846 P.2d at 1087. In *Harrison*, the defendant was found unconscious behind the wheel of his vehicle. *Id.* at 75, 846 P.2d at 1084. He submitted to breath alcohol tests, which produced BAC readings of .17 and .15. *Id.* The district court subsequently convicted the defendant of a per se violation of Subsection (C) based on the BAC readings. *Id.* In his appeal, the defendant argued that because he was found unconscious, the state failed to prove that he intended to drive his car and, therefore, there was insufficient evidence to sustain his conviction. *Id.* at 76-77, 846 P.2d at 1085-86. Rejecting the defendant's argument, this Court held that "the criminal offense of DWI, [under Section 66-8-102(A), (C)], is a strict liability crime." *Harrison*, 115 N.M. at 74, 846 P.2d at 1083. This Court reasoned that the plain meaning of Section 66-8-102, which does not contain language requiring a mens rea, and the overriding compelling public interest in deterring individuals from driving while intoxicated, demonstrated legislative intent that DWI is a strict liability crime. *Harrison*, 115 N.M. at 77, 846 P.2d at 1086.

**{10}** Defendant attempts to distinguish *Harrison* on two grounds: (1) *Harrison* did not specifically address a violation of the impaired to the slightest degree standard of Subsection (A); and (2) Defendant's argument as to intent in this case is that she did not voluntarily become intoxicated, whereas, in *Harrison*, the defendant argued that he lacked the intent to drive. We disagree and conclude that the rationale and the holding set forth in *Harrison* that DWI is a strict liability crime also applies to charges brought under Subsection (A) and the impaired to the slightest degree standard.

**{11}** First, this Court in *Harrison* examined the language of Section 66-8-102 in its entirety, including Subsection (A), in reaching the conclusion that the plain meaning of Subsection (C) dictates that DWI is a strict liability crime. *Harrison*, 115 N.M. at 77, 846 P.2d at 1086. We noted that the language of the entirety of Section 66-8-102, not just Subsection (C), "makes absolutely no reference whatsoever to a required intent on the part of an accused." *Harrison*, 115 N.M. at 77, 846 P.2d at 1086. Indeed, Subsection (A) provides only that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." Therefore, regardless of whether a defendant is ultimately convicted of a per se violation or under the impaired to the slightest degree standard, the plain meaning of Section 66-2-108 "clearly provides that the only thing necessary to convict a person of DWI is proof that the defendant was driving a vehicle either under the influence of intoxicating liquor or while he had a certain percentage of alcohol in his blood." *Harrison*, 115 N.M. at 77, 846 P.2d at 1086; *see State v. Willie*, 2009-NMSC-037, ¶ 9, 146 N.M. 481, 212 P.3d 369 ("The principal command of statutory construction is that the court should determine and effectuate the intent of the [L]egislature, using the plain language of the statute as the primary indicator of legislative intent." (alteration omitted) (internal quotation marks and citation omitted)).

**{12}** Additionally, as a rule of statutory construction, we read all provisions of a statute and all statutes in pari materia together in order to ascertain the legislative intent. *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). We therefore consider whether intent is required for conviction under the impaired to the slightest degree provision of

4

Subsection (A) using the per se standard of Subsection (C) as a guide. *See Valdez v. Vigil*, 2007-NMCA-031, ¶ 11, 141 N.M. 316, 154 P.3d 691 (holding that the interpretation of a subsection of a statute should not be read in isolation but, instead, legislative intent is "informed by consideration of" the entire statute). Subsections (A) and (C) respectively provide that "[i]t is unlawful for" a defendant to drive a vehicle while under the influence of intoxicating liquor or while having a blood alcohol concentration of above .08 percent. Neither subsection contains an intent element. Considering that both subsections begin with identical language and lack an intent element, it would be inconsistent to require the State to prove intent with regard to convictions under Subsection (A) in light of our prior determination that Subsection (C) is a strict liability crime.

**{13}** Lastly, the *Harrison* Court rationalized that there is compelling public interest in deterring individuals from driving while intoxicated to a degree that it overrides the individual interest that intent be required for conviction. 115 N.M. at 77, 846 P.2d at 1086. Specifically, we noted that "innocent individuals are oftentimes injured or killed, and their families and loved ones made to suffer [and, therefore, the potential harm of DWI is] much greater than if only the irresponsible person who drove while intoxicated was put in danger." *Id.* As a result, we stated that "the [L]egislature recognized this significant public interest and potential harm when it drafted Section 66-8-102" and, therefore, it strengthened our conclusion that DWI under Subsection (C) is a strict liability crime. *Harrison*, 115 N.M. at 77, 846 P.2d at 1086. The interest in deterring individuals from driving while intoxicated is furthered by DWI being a strict liability crime, regardless of whether the per se or impaired to the slightest degree standard is used to determine the guilt or innocence of the accused. Accordingly, when we read Section 66-8-102 in view of legislative intent, DWI under Subsection (A) and the impaired to the slightest degree standard is a strict liability crime. We next turn to whether involuntary intoxication is nonetheless a valid defense.

**INVOLUNTARY INTOXICATION DEFENSE**

**{14}** Defendant argues that the district court erred in not considering involuntary intoxication as a defense to DWI, even assuming that DWI under Subsection (A) is a strict liability crime. We initially note that the parties point out that there is a split of authority among the states as to whether involuntary intoxication is a valid defense to strict liability DWI. *Compare, e.g.*, *New Jersey v. Hammond*, 571 A.2d 942, 948 (N.J. 1990) (holding that involuntary intoxication is not a defense to the state DWI statute), *with Carter v. Florida*, 710 So. 2d 110, 113 (Fla. Dist. Ct. App. 1998) (holding that an involuntary intoxication jury instruction should have been given to the jury, even though the state DWI statute was construed as a strict liability crime).

**{15}** Defendant points out that this Court, in *State v. Rios*, 1999-NMCA-069, ¶ 1, 127 N.M. 334, 980 P.2d 1068, held that duress is a defense to strict liability DWI and argues that it would be inconsistent to not allow involuntary intoxication as a defense. Indeed, this Court held that common law duress is applicable to DWI. However, there are significant

5

differences between the defenses of duress and involuntary intoxication that support a different application in the strict liability context.

**{16}** In New Mexico, duress consists of three elements: (1) the defendant committed the crime under threat, (2) the defendant feared immediate bodily harm to himself or others if he failed to commit the crime, and (3) a reasonable person in the defendant's position would have acted in the same way under the circumstances. *Id.* ¶ 7. "A defendant pleading duress is *not* attempting to disprove a requisite mental state" and is, instead, attempting excusal "from criminal liability because of the circumstances surrounding their intentional act." *Id.* ¶ 12. "[D]uress does not negate the mental state or volitional act, but instead justifies the intended criminal act[.]" *Id.*

**{17}** In contrast, involuntary intoxication is a defense only when it negates the intent element of a crime. *See State v. Lovato*, 110 N.M. 146, 147, 793 P.2d 276, 277 (Ct. App. 1990) ("A showing of intoxication is a defense to a specific intent crime where the intoxication is to such a degree as would negate the possibility of the necessary intent."); *cf. State v. Campos*, 1996-NMSC-043, ¶ 62, 122 N.M. 148, 921 P.2d 1266 (Franchini, J., dissenting) ("The only rationale for allowing involuntary intoxication as a defense at all is because intoxication in fact may negate the malice for murder."). UJI 14-5106, the jury instruction tendered to the metropolitan court by Defendant, provides the requirements for raising the defense of involuntary intoxication. UJI 14-5106 applies when "[e]vidence has been presented that the defendant was intoxicated but that the intoxication was involuntary." UJI 14-5106 (Use Note 1) provides:

> If this instruction is given, add to the essential elements instruction for the offense charged:
>
> The defendant was not involuntarily intoxicated at the time the offense was committed or, if defendant was involuntarily intoxicated, the defendant nonetheless:
>
> knew what [he] [she] was doing or understood the consequences of [his] [her] act, knew that [his] [her] act was wrong and could have prevented [himself] [herself] from committing the act.

As Use Note 1 confirms, involuntary intoxication is only a defense in New Mexico when the defendant's intent to commit the criminal act is negated by the intoxication to the extent that the defendant did not understand the consequences of the action or did not know the act was wrong and could not have prevented the act.

**{18}** Examining the differences between the justifications for duress and involuntary intoxication, it follows that duress can be a defense to a strict liability crime while involuntary intoxication cannot. Strict liability crimes, by definition, do not require criminal intent. *See State v. Torres*, 2003-NMCA-101, ¶ 7, 134 N.M. 194, 75 P.3d 410; *see also*

6

Black's Law Dictionary 429 (9th ed. 2009) (defining a strict liability crime as a "crime that does not require a *mens rea* element"). Involuntary intoxication is only a defense "to the extent that it impairs the ability to form intent." *Morales v. Mitchell*, 507 F.3d 916, 938 (6th Cir. 2007). As such, it would be illogical to allow an involuntary intoxication defense to a strict liability crime because the mental state of the defendant is irrelevant for conviction. Therefore, involuntary intoxication is not a defense to a strict liability crime because it is irrelevant in the strict liability context as to whether the defendant had intent to commit the prescribed act. *See State v. Lucero*, 98 N.M. 204, 206, 647 P.2d 406, 408 (1982) ("[T]he sole question for the jury in a strict liability offense is whether [it] believes the defendant committed the act prescribed by the statute. If it finds that the defendant did commit the act, then the jury is obliged to bring a guilty verdict.").

**{19}** Duress, on the other hand, is available as a defense when the defendant committed the prescribed act, with the requisite intent, in order to "avoid[] a harm of greater magnitude." *Rios*, 1999-NMCA-069, ¶ 12 (internal quotation marks and citation omitted). The defendant, making a duress defense, does not argue lack of intent because of duress and, instead, essentially concedes the commission of the prescribed act with the requisite intent, but argues that the act was justified. Therefore, because duress is not based on the principle that a defendant's intent is negated, it does not contain the same logical fallacy as an involuntary intoxication defense in the strict liability context. The metropolitan court, therefore, did not err by holding that involuntary intoxication is not available as a defense to the strict liability crime of DWI under Subsection (A).

**CONCLUSION**

**{20}** We hold that DWI, contrary to Section 66-8-102(A), is a strict liability crime and, as a result, an involuntary intoxication defense is not available. We therefore affirm.

**{21}   IT IS SO ORDERED.**

---

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

---

**CELIA FOY CASTILLO, Chief Judge**

---

**LINDA M. VANZI, Judge**

**Topic Index for *State v. Gurule*, Docket No. 30,190**

**CL                          CRIMINAL LAW**

7

| | |
|---|---|
| CL-DG | Driving While Intoxicated |
| CL-DS | Duress |
| CL-IX | Intoxication |
| CL-SR | Strict Liability |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-RC | Rules of Construction |