JUSTICE RICE,
dissenting.
¶59 I believe the Court’s analysis is flawed in that it is contrary to the relevant statutes, the accompanying Criminal Law Commission Comments, the decisions of this Court, and the decisions of the state which is the source of our criminal code. I further believe that this decision will have the effect of subverting the Legislature’s clear intention that DUI is to be an absolute liability offense.

The Voluntary Act Statute, § 45-2-202, MCA, and Absolute Liability.

¶60 The Court matter-of-factly holds that a voluntary act is an element of every offense, citing § 45-2-202, MCA, and thereafter premises the entire opinion on that assumption, without considering *95 whether absolute-liability offenses are of a different character. Opinion, ¶ 25. Relying on State v. Leprowse, 2009 MT 387, 353 Mont. 312, 221 P.3d 648, the Court offers the new proposition that “‘absolute liability’ does not necessarily mean absolute.” Opinion, ¶ 32. However, it is clear that the Legislature treats absolute-liability crimes separately and did not intend for the voluntary act statute to apply to absolute-liability crimes.
¶61 The voluntary act statute, § 45-2-202, MCA, provides:
A material element of every offense is a voluntary act, which includes an omission to perform a duty that the law imposes on the offender and that the offender is physically capable of performing, except for deliberate homicide under 45-5-102(l)(b) for which there must be a voluntary act only as to the underlying felony. Possession is a voluntary act if the offender knowingly procured or received the thing possessed or was aware of the offender’s control of the thing for a sufficient time to have been able to terminate control.
We have applied this statute in cases involving crimes with a mental state element, see e.g. State v. Korell, 213 Mont. 316, 690 P.2d 992 (1984) (attempted deliberate homicide and aggravated assault); State v. Zampich, 205 Mont. 231, 667 P.2d 955 (1983) (mitigated deliberate homicide), but have never done so in the context of absolute-liability crimes and, particularly, in the context of traffic offenses. Our silence in this regard is consistent with the Legislature’s intent.
¶62 The voluntary act statute was originally enacted in 1973 and codified as § 94-2-102, R.C.M. 1947. The Annotator’s Note to § 94-2-102, R.C.M. 1947 provides: “Because criminal liability requires a voluntary act, except in certain statutes where absolute liability is imposed, it is a defense that act was done involuntarily ... such as during a seizure.” Annotator’s Note, Mont. Crim. Code of 1973, Annotated at 90 (1973 ed.) (emphasis added and citation omitted). Further, the Criminal Law Commission provided similar instruction about this statute: “The minimum elements of any offense (other than one in which absolute liability for an act alone is imposed) are described as a voluntary act and a specified state of mind.” Revised Criminal Commission Comment, Mont. Crim. Code of 1973 at 90 (emphasis added). In 1979, the Montana Criminal Code was reorganized using a new numbering system and the voluntary act statute was re-codified at § 45-2-202, MCA. However, no changes were *96 made to the substance of the statute. Preface, Mont. Crim. Code of 1973 at i (1980 ed.)[3].
¶63 The Legislature was thus careful not to impose a “voluntary act” requirement in absolute liability offenses-absolute really does mean absolute. That makes common sense; of necessity, “voluntarily” is a kind of mental state and is thus inconsistent with absolute liability. Black’s Law Dictionary, Seventh Edition, defines “voluntary” as “[d]one by design or intention <voluntary act>.” As the Court notes, the Legislature declared DUI to be an absolute offense. Opinion, ¶ 19. Therefore, the State need not prove that Paffhausen acted voluntarily, and Paffhausen is not entitled to offer evidence that she did not act voluntarily. See State v. Weller, 2009 MT 168, ¶ 8, 350 Mont. 485, 208 P.3d 834 (to establish DUI, the State was “not required to prove Weller’s mental state” and, thus, consideration of Weller’s “involuntary intoxication” defense was not necessary). The Court’s insertion of a mental state requirement into this absolute liability offense essentially guts the absolute nature of the offense.

Criminal Responsibility of Intoxicated Persons: § 45-2-203, MCA.

¶64 Paffhausen is careful to argue that she does not seek to introduce evidence that she lacked the mental state to commit DUI, acknowledging that DUI does not include a mental state. Instead, she argues that she should be allowed “to present evidence that she was unknowingly drugged as it relates to the voluntary act element of DUI.” Opinion, ¶ 15. However, Montana law specifically prohibits the use of intoxication for this purpose. Thus, even assuming arguendo that the Court is correct in concluding that a voluntary act is a necessary element of an absolute-liability offense, it nonetheless errs by reasoning that involuntary intoxication may be offered to negate the act element.
¶65 Montana’s statute on criminal liability for intoxicated persons, § 45-2-203, MCA, provides:
A person who is an intoxicated condition is criminally responsible for the person’s conduct, and an intoxicated condition is not a defense to any offense and may not be taken into consideration in *97 determining the existence of a mental state that is an element of the offense unless the defendant proves that the defendant did not know that it was an intoxicating substance when the defendant consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition.
(Emphasis added.) The statute has independent clauses which are critical to its application. The first clause mandates that an intoxicated person is criminally responsible for her “conduct.” Conduct is defined as “an act or series of acts and the accompanying mental state.” Section 45-2-101(15), MCA. The beginning of the second clause reinforces the first clause, adding the prohibition that “an intoxicated condition is not a defense to any offense.” (Emphasis added.) The plain wording of this provision broadly prohibits the use of intoxication as a defense to any charge. If the statute stopped there, an intoxicated defendant would always be criminally responsible for both her “acts” and “accompanying mental state.” Section 45-2-101(15), MCA. However, the statute continues by carving out a narrow exception, permitting a defendant to negate the mental state element by proving she did not know she “consumed, smoked, sniffed, injected, or otherwise ingested” a substance which was intoxicating, or, in other words, that the intoxication was involuntary. A careful reading of the statute thus allows for only one conclusion: an intoxicated condition is prohibited as a defense to all offenses, except that involuntary intoxication may be offered as a defense only to the mental state element. Stated another way, this statute does not permit a defendant to negate an act element by submitting evidence of involuntary intoxication, as Paffhausen is attempting to do here.
¶66 Our precedent has adhered to this reading of § 45-2-203, MCA. In Weller, the defendant appealed his DUI conviction, arguing that the district court erred by refusing to include a jury instruction on involuntary intoxication based upon his assertion that he unknowingly drank punch that had been spiked with alcohol. Weller, ¶ 4. We turned to § 45-2-203, MCA, and the attendant Commission Comments, and concluded that the statute only allowed the use of involuntary intoxication as a defense if the crime included a mental state element. Weller, ¶ 7. Because DUI was an absolute liability offense and did not include a mental state element, we affirmed the conviction. Weller, ¶¶ 8-9.
¶67 The Court errs by failing to acknowledge § 45-2-203, MCA, and our precedent applying that provision.

*98
Illinois, the source state for Montana’s Criminal Code, Prohibits Evidence of Involuntary Intoxication as a Defense to DUI.

¶68 The Court references cases from Texas, North Carolina, and California, but these jurisdictions have no direct connection to Montana’s statutes governing voluntary act or criminal responsibility for conduct while intoxicated. Rather, Montana borrowed both of these provisions from Illinois. See Sections 45-2-202 and 45-2-203, MCA, Criminal Law Commission Comments. Because the “Montana Criminal Code is modeled after the Illinois Criminal Code,” State v. Cole, 226 Mont. 377, 379, 744 P.2d 526, 527 (1987), we have repeatedly turned to Illinois for guidance in interpreting our criminal statutes. See State v. Murphy, 174 Mont. 307, 310, 570 P.2d 1103, 1105 (1977) (accountability statute); State v. Gollehon, 262 Mont. 1, 26-27, 864 P.2d 249, 265 (1993) (same); State v. Hernandez, 213 Mont. 221, 224, 689 P.2d 1261, 1262-63 (1984) (theft statute); State v. Bush, 195 Mont. 475, 479, 636 P.2d 849, 851 (1981) (solicitation statute); State v. Reiner, 179 Mont. 239, 247, 587 P.2d 950, 955 (1978) (justifiable use of force statute); State v. Chatriand, 243 Mont. 375, 377, 792 P.2d 1107, 1108-09 (1990) (suppression of evidence statute).
¶69 Decisions from Illinois courts are consistent with reading § 45-2-203, MCA, as prohibiting involuntary intoxication as a defense to DUI. While Illinois permits the defense of automatism for some crimes, see Illinois v. Grant, 377 N.E.2d 4, 8 (Ill. 1978) (aggravated battery and obstructing a police officer), it prohibits the use of involuntary intoxication as a defense to DUI. Illinois v. Teschner, 394 N.E.2d 893, 895 (Ill. App. 1979). Illinois courts have reasoned that this difference is necessary to carry out the legislative intent of DUI laws to ensure motorist safety: *99 Teschner, 394 N.E.2d at 895 (internal citation omitted; emphasis added).[4]
*98 [T]he proper regulation of traffic and traffic accidents requires the imposition of absolute liability. This is especially so in the case of driving while intoxicated. To require a mental state would raise the possibility of an involuntary intoxication defense. While involuntary intoxication is a proper defense to most crimes ...to allow such a defense to a charge of driving while intoxicated would result in the inadequate protection of the public from the dangers of intoxicated drivers.
*99 ¶70 The Legislature in § 45-2-203, MCA, mandated that intoxicated persons are criminally liable for their acts. It is especially important to adhere to this command in the context of the offense of DUI. Paffhausen claims she should not be held accountable because her intoxication was the result “of someone’s act besides her own.” Opinion, ¶ 15. Nonetheless, in an intoxicated condition, she climbed into her vehicle, started the engine, and commenced to drive in a dangerous manner. This danger has prompted courts in Illinois, the source state for our statutes, to reject efforts to defend against DUI on the grounds of involuntary intoxication.[5]

Prohibition of an Involuntary Intoxication Defense to DUI is not inconsistent with the Legislatively-mandated Compulsion Defense.

¶71 The Court reasons that the defense of involuntary intoxication should be permitted because we have previously approved of the defense of compulsion in DUI cases. The significant differences between the defenses, however, warrant the inclusion of compulsion and the exclusion of involuntary intoxication in DUI cases.
¶72 Other courts have reasoned that it is logical to permit the compulsion defense while disallowing an automatism defense. See e.g. N.M. v. Gurule, 252 P.3d 823 (N.M. App. 2011). In Gurule, the defendant alleged she had become involuntarily intoxicated after drinking “tea” that her friend made for her. Gurule, 252 P.3d at 825. Unbeknownst to the defendant, the “tea” was actually a “hot toddy” that contained “more than one shot of bourbon.” Gurule, 252 P.3d at 825.[6] Later, the defendant was arrested for drunk driving. Gurule, 252 *100 P.3d at 825. At trial, the court rejected the defendant’s jury instruction on involuntary intoxication, ruling that the defense was “inapplicable” to strict-liability crimes. Gurule, 252 P.3d at 825. The defendant appealed this ruling, arguing that because New Mexico courts recognized the affirmative defense of “duress” for strict-liability drunk driving charges, it would be “inconsistent to not allow involuntary intoxication as a defense.” Gurule, 252 P.3d at 828. The court rejected this argument, reasoning that the two affirmative defenses had significant differences in application and effect:
Examining the differences between the justifications for duress and involuntary intoxication, it follows that duress can be a defense to a strict liability crime while involuntary intoxication cannot. Strict liability crimes, by definition, do not require criminal intent. Involuntary intoxication is only a defense to the extent that it impairs the ability to form intent. As such, it would be illogical to allow an involuntary intoxication defense to a strict liability crime because the mental state of the defendant is irrelevant for conviction. Therefore, involuntary intoxication is not a defense to a strict liability crime because it is irrelevant in the strict liability context as to whether the defendant had intent to commit the prescribed act.
Duress, on the other hand, is available as a defense when the defendant committed the prescribed act, with the requisite intent, in order to avoid a harm of greater magnitude. The defendant, making a duress defense, does not argue lack of intent because of duress and, instead, essentially concedes the commission of the prescribed act with the requisite intent, but argues that the act was justified. Therefore, because duress is not based on the principle that a defendant’s intent is negated, it does not contain the same logical fallacy as an involuntary intoxication defense in the strict liability context.
Gurule, 252 P.3d at 829 (internal citations, quotations, and brackets omitted). The New Mexico court came to the common-sense conclusion that an affirmative defense that negates the mental state is “irrelevant” to strict-liability crimes, whereas an affirmative defense that excuses the commission of a crime because it was justified under the circumstances is relevant to strict-liability crimes.
¶73 This reasoning is especially persuasive given the command of § 45-2-203, MCA, that involuntary intoxication is only a defense to the mental state element of an offense. Just like New Mexico’s duress defense, Montana’s affirmative defense of compulsion excuses the *101 defendant’s conduct-even though that conduct satisfied the elements of the offense-because the offense was justified under the circumstances. See Criminal Commission Comments to § 45-2-212, MCA (“Compulsion, coercion, or duress is another long-recognized basis for finding a person not guilty of an offense charged, although his conduct appears to be within the definition of the offense.”). It was logical for the Montana Legislature to allow a defense that excuses illegal behavior done so as to prevent a harm of greater magnitude (compulsion), § 45-2-212, MCA, while excluding a defense that merely negates an element of the crime without regard to public safety (involuntary intoxication), § 45-2-203, MCA.
¶74 Finally, it should be emphasized the compulsion defense has been codified by the Montana Legislature. Section 45-2-212, MCA. The defense which Paffhausen seeks to offer has not. The only legislative codification of the involuntary intoxication defense, § 45-2-203, MCA, expressly prohibits the use of involuntary intoxication except to negate the mental state. As an absolute liability offense, DUI does not have a mental state. Simply put, involuntary intoxication is “irrelevant” to absolute-liability crimes in Montana. Gurule, 252 P.3d at 829.

Holding Paffhausen Responsible for Driving Under the Influence is Not Unduly Harsh.

¶75 The Court reasons that prohibiting Paffhausen’s “involuntary act” defense could lead to the harsh result of a person being punished for acts she was not conscious of. Opinion, ¶ 33.1 disagree that this is an unduly harsh result, either under the facts of this case or in comparison to other scenarios in which DUI may be charged.
¶76 First, as we have acknowledged, “[d]runk driving legislation is intended to prohibit drunken operation under any and all circumstances. The act of driving a vehicle under the influence of alcohol or drugs, or both, is itself the crime.” State v. McDole, 226 Mont. 169, 174, 734 P.2d 683, 686 (1987) (internal quotation marks and citations omitted). Secondly, driving is not a right, but a privilege to be undertaken only when the sobriety of the driver is assured. This is critical for the safety of our citizens. Here, Paffhausen was stopped because she had run through a stop sign and prematurely slammed on her brakes at another stop sign. Fortunately, Paffhausen did not kill or injure someone, but that damage would have been no less painful had Paffhausen become intoxicated unwittingly instead of voluntarily. Affirming Paffhausen’s conviction would be no harsher, in my view, than a DUI conviction for sleeping off intoxication in a non-running car sitting in a parking lot. See e.g. State v. Updegraff, 2011 MT 321, ¶ 1, *102 363 Mont. 123, 267 P.3d 28 (defendant asleep in car at fishing access site); State v. Schwein, 2000 MT 371, ¶ 6, 303 Mont. 450, 16 P.3d 373 (defendant asleep in vehicle by saloon). Undoubtedly, Paffhausen posed more of a danger to the public than these defendants did. Holding Paffhausen responsible is harsh only insofar as it furthers the purpose of DUI legislation.

Practical Implications of Today’s Decision.

¶77 I believe that the practical effect of the Court’s decision will be detrimental. The Court now permits a defendant, under the name of a “voluntary act” defense, to introduce any kind of evidence that can be mustered to prove that she did not drive “voluntarily” — in effect, permitting mental state evidence to be in play. This may open the door to all manner of “I didn’t know” defenses, essentially overturning the Legislature’s determination to make DUI an absolute liability offense and our previous cases based thereon. The Court attempts to corral this potential by requiring a new pre-trial hearing process that already over-busy courts of limited jurisdiction will have to conduct. Opinion, ¶¶ 35-38. These pre-trial assessments will, of course, be a new basis for appeal.
¶78 As the New Jersey Supreme Court reasoned in holding that the automatism defense was inapplicable to DUI charges, the involuntary intoxication defense has the likelihood to lead to “pretextual defenses.” N.J. v. Hammond, 571 A.2d 942, 948 (N. J. 1991) (“This kind of defense has every potential for being pretextual, and is the kind of tendentious defense the Legislature sought to discourage ....”); see also Meghan Paulk Ingle, Law on the Rocks: The Intoxication Defenses are Being Eighty-Sixed, 55 Vand. L. Rev. 607, 616 (2002) (survey of case law reveals few examples of effectively made intoxication defenses). Yet, we are forging ahead. My primary concern as a jurist is the legal errors in the Court’s decision. Beyond that, I am troubled by what the Court’s decision means for our state’s continuing struggle with drunk driving and the already difficult problem that DUI cases present for our courts.
¶79 I would affirm the District Court.
JUSTICE COTTER and JUSTICE BAKER join in the dissenting Opinion of JUSTICE RICE.

 The Criminal Law Commission Comments provide interpretational guidance and in this case are particularly helpful because the voluntary act statute remained substantially untouched since its passage in “Criminal Code of 1973.” Compare § 94-2-102, R.C.M. (1973) with § 45-2-202, MCA (2011). The only substantive change came in 1987 when the Legislature amended the statute to include the clause regarding felony murder, § 45-5-102(l)(b).

 Illinois’ voluntary act statute has remained unchanged from 1961 to present. Compare Ill. Comp. Stat. Ann. Title 38, §§ 4-1 and 4-2 (1961) with Ill. Comp. Stat. 720 §§ 5/4-1 and 5/4-2 (2012).

 Another problem in the Court’s analysis is that the cases cited by the Court for the proposition that automatism should be a defense to absolute-liability offenses do not involve absolute liability offenses. See Mendenhall v. Tex., 77 S.W.3d 815 (Tex. Crim. App. 2002) (assault on a public officer); Cal. v. Wilson, 427 P.2d 820 (Cal. 1967) (murder); N.C. v. Fields, 376 S.E.2d 740 (N.C. 1989) (first-degree murder); State v. Korell, 213 Mont. 316, 690 P.2d 992 (1984) (attempted deliberate homicide and aggravated assault). Automatism in these contexts is a different issue, because § 45-2-202, MCA, requires a voluntary act for crimes that are not absolute-liability offenses.

 This is the classic DUI defense-“Somebody spiked my drink”-that we rejected as a matter of law in Weller.