**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date:  **OCTOBER 25, 2016**

**NO. 33,718**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LARESSA VARGAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

{1}    Defendant Laressa Vargas appealed her conviction in the metropolitan court (trial court) for aggravated driving while intoxicated (DWI), contrary to NMSA 1978, Section 66-8-102(D)(3) (2016), to the district court. The district court affirmed the trial court's sentencing order and filed a memorandum opinion. Defendant now appeals to this Court. Defendant challenges the sufficiency of the evidence to support her conviction. Defendant also challenges the constitutionality of the arresting officer's request for a blood test and argues that evidence of her refusal to submit to a blood test should have been excluded.

{2}    We conclude that sufficient evidence supported the trial court's finding that Defendant was driving under the influence of intoxicating liquor and was impaired to the slightest degree. However, in light of the United States Supreme Court's recent holding in *Birchfield v. North Dakota*, __U.S.__, 136 S. Ct. 2160 (2016), we conclude that Defendant may not be held criminally liable for refusing to submit to a warrantless blood test based on implied consent. *Id.* at 2185-86. We affirm in part, reverse in part, and remand.

**I.    BACKGROUND**

{3}    On April 23, 2011, the Bernalillo County Sheriff's Office conducted a sobriety checkpoint. Deputy Patrick Rael of the Bernalillo County Sheriff's Office was

working the checkpoint and observed Defendant's vehicle, which was stopped approximately 15 to 20 yards in advance of the checkpoint. Deputy Rael signaled to Defendant to pull forward. Defendant rolled down her window and said, "Good afternoon," which Deputy Rael found odd since it was approximately 1:00 a.m. Deputy Rael noticed the odor of alcohol coming from the vehicle and from Defendant. Deputy Rael also noticed that Defendant appeared nervous and confused, and that her eyes were bloodshot and watery. During their initial contact, Defendant denied consuming alcohol.

{4}     Deputy Rael requested that Defendant perform field sobriety tests (FSTs) and Defendant agreed. With Defendant outside of the vehicle, Deputy Rael continued to smell alcohol coming from Defendant's person. Defendant performed poorly on each of the FSTs. Deputy Rael believed that Defendant could not safely operate a vehicle and Defendant was placed under arrest. Deputy Rael testified that he read the Implied Consent Act to Defendant, and requested that she submit to a breath test. Defendant then admitted to having consumed alcohol, and the breath test indicated that her blood alcohol concentration (BAC) was .04/.05.

{5}     Based on Defendant's poor performance on the FSTs, Deputy Rael did not believe the BAC results were consistent with her level of impairment. Deputy Rael

2

requested that Defendant also submit to a blood test. Defendant initially agreed to the blood test, but later refused. Defendant was charged with aggravated DWI.

{6}    After a bench trial, Defendant was convicted of aggravated DWI. Defendant appealed to the district court. The district court affirmed Defendant's conviction. This appeal followed.

## II.    DISCUSSION

## A.    Sufficiency of the Evidence

{7}    "[T]he test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "In reviewing the sufficiency of the evidence, [the appellate courts] must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham,* 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{8}    In the present case, Defendant argues that because the State presented no direct evidence of impaired driving, it lacked sufficient evidence to support a verdict of aggravated DWI beyond a reasonable doubt. Section 66-8-102(D)(3) states:

> Aggravated driving under the influence of intoxicating liquor . . . consists of:

. . . .

>    (3)    refusing to submit to chemical testing, as provided for in the Implied Consent Act[, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015)], and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor[.]

There is no dispute that Defendant refused to submit to the blood test. Accordingly, the sole question is whether substantial evidence supports the trial court's conclusion that Defendant was driving under the influence of intoxicating liquor.

{9}    In order to convict Defendant of driving under the influence of intoxicating liquor, the trial court must find that as a result of drinking liquor Defendant was "less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle [a vehicle] with safety to himself and the public." *State v. Sisneros*, 1938-NMSC-049, ¶ 18, 42 N.M. 500, 82 P.2d 274 (internal quotation marks and citation omitted); *State v. Gurule*, 2011-NMCA-042, ¶ 7, 149 N.M. 599, 252 P.3d 823 (same). "This standard is known as the impaired to the slightest degree standard." *Gurule*, 2011-NMCA-042, ¶ 7 (internal quotation marks and citation omitted).

{10}    At trial, the State presented evidence that Defendant was driving the vehicle when it approached the checkpoint after having consumed alcohol. Deputy Rael testified that Defendant was in fact driving the vehicle after having consuming

4

alcohol when she approached the checkpoint. Defendant eventually admitted to consuming alcohol and submitted to a breath test, which measured her BAC .04/.05.

{11}     Deputy Rael testified that Defendant was confused, had bloodshot, watery eyes, and smelled of alcohol. According to Deputy Rael, Defendant was unable to maintain her balance and was unable to follow his instructions during the FST sequences. Deputy Rael administered four FST sequences and Defendant was not able to complete any of them successfully.

{12}     We hold that this evidence supports her conviction for driving while impaired to the slightest degree. *See State v. Sparks*, 1985-NMCA-004, ¶ 6, 102 N.M. 317, 694 P.2d 1382 (defining substantial evidence as that evidence which a reasonable person would consider adequate to support a defendant's conviction); *see also State v. Neal*, 2008-NMCA-008, ¶ 29, 143 N.M. 341, 176 P.3d 330 (observing that the defendant's unsatisfactory performance on the FSTs, including his failure to follow instructions and his lack of balance, constituted signs of intoxication, which supported his conviction for driving under the influence of intoxicating liquor); *State v. Soto*, 2007-NMCA-077, ¶¶ 32, 34, 142 N.M. 32, 162 P.3d 187 (holding that there was sufficient evidence of driving under the influence pursuant to the impaired-to-the-slightest-degree standard, even though, among other factors, the officers observed no irregular driving when the defendant "had red, bloodshot, and

watery eyes, as well as slurred speech and a very strong odor of alcohol on his breath[,]" the defendant admitted drinking, the officers observed several empty cans of beer where the defendant had been, and the officers testified that the defendant was definitely intoxicated), *abrogated on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

**B.      Implied Consent to Submit to Blood Testing**

{13}     Defendant also argues that evidence of her refusal to take a blood test should have been suppressed because, under the circumstances of this case, a compelled blood test was constitutionally unreasonable under both the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant also challenges the constitutionality of using her refusal to submit to the blood test to aggravate her DWI charge.

**1.      Preservation**

{14}     The State asserts that Defendant failed to preserve the suppression argument she now makes on appeal. Under the New Mexico Rules of Appellate Procedure, "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]" Rule 12-216(A) NMRA. Defendant suggests that by arguing for suppression of the expanded search, she preserved the constitutional aspect of the unreasonableness of the search. Defendant further declares that the

district court's denial of her request for suppression was a ruling fairly invoked from the lower court. Defendant did not directly or indirectly assert this constitutional principle in her appeal to the district court nor did she provide the necessary factual basis that would allow for the district court to rule on the issue. *See State v. Gomez*, 1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1. The district court did not address the issue. As a result, Defendant has failed to preserve her argument for appeal.

{15} However, where a decision by the district court was not fairly invoked on a particular issue, an appellate court may still consider "jurisdictional questions, issues of general public interest, or matters involving fundamental error or fundamental rights of a party." *State v. Harrison*, 2010-NMSC-038, ¶ 10, 148 N.M. 500, 238 P.3d 869 (internal quotation marks and citation omitted); *see* Rule 12-216. Because of the unusual nature of this case where criminal liability has been imposed for refusing to submit to an unconstitutional request and the United States Supreme Court having decided and explained the applicable law on this novel issue, during the pendency of this appeal, we will exercise our discretion to consider whether compelling Defendant to submit to a blood test constitutes an illegal search under the Fourth Amendment because "freedom from illegal search and seizure is a fundamental right" that may, in particular circumstances, come within the exception to the preservation requirement. *Gomez*, 1997-NMSC-006, ¶ 31 n.4.

## 2. Standard of Review

{16} "The legality of a search . . . ultimately turns on the question of reasonableness." *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. While this "inquiry is necessarily fact-based it compels a careful balancing of constitutional values, which extends beyond fact-finding," and is therefore subject to de novo review. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted).

{17} In the present case, Defendant advances arguments under the United States and the New Mexico Constitutions, which provide overlapping protections against unreasonable searches and seizures. *Gomez*, 1997-NMSC-006, ¶¶ 19-23. In analyzing whether challenged police procedures are unlawful, we apply the interstitial approach set forth in *Gomez*, which requires that we first consider whether the United States Constitution makes the challenged procedures unlawful. *Id.* ¶ 19. "If so, the fruits usually must be suppressed as evidence. If not, we next consider whether the New Mexico Constitution makes the search unlawful." *Rowell*, 2008-NMSC-041, ¶ 12; *Gomez*, 1997-NMSC-006, ¶ 19.

## 3. Reasonableness of a Warrantless Blood Test

{18} Under the Fourth Amendment, the reasonableness of a search depends "on a balance between the public interest and the individual's right to personal security free

from arbitrary interference by law officers." *State v. Williams*, 2011-NMSC-026, ¶ 10, 149 N.M. 729, 255 P.3d 307 (internal quotation marks and citation omitted). The Fourth Amendment expresses a clear preference in favor of obtaining search warrants prior to conducting a search. *State v. Williamson*, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d 376. Our Supreme Court has stated that "[a]ny warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable, subject only to well-delineated exceptions." *Rowell*, 2008-NMSC-041, ¶ 10 (internal quotation marks and citation omitted).

{19}     A blood alcohol test is considered "a search of 'persons' [,]" and therefore falls within the ambit of the Fourth Amendment. *State v. Richerson*, 1975-NMCA-027, ¶ 23, 87 N.M. 437, 535 P.2d 644. However, valid consent to a search is among the recognized "exceptions to the warrant requirement." *State v. Garnenez*, 2015-NMCA-022, ¶ 5, 344 P.3d 1054. New Mexico, like all states, has sought to combat the evils of drunk driving by enacting the Implied Consent Act, by which anyone who operates a motor vehicle "is deemed to have given consent to a chemical test to determine alcoholic content of his breath, blood, or urine." *In re McCain*, 1973-NMSC-023, ¶ 9, 84 N.M. 657, 506 P.2d 1204; *see* § 66-8-107.

9

{20} The United States Supreme Court has "referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Birchfield*, ___U.S.___, 136 S. Ct. 2160, 2185; *see e.g.*, *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1565-66 (2013) (plurality opinion); *South Dakota v. Neville*, 459 U.S. 553, 560 (1983). Recently, the United State Supreme Court considered whether criminalizing a driver's refusal to submit to a chemical test comports with the Fourth Amendment standard of reasonableness. *Birchfield*, ___U.S.___, 136 S. Ct. 2160, 2173. *Birchfield* was a consolidated case wherein three defendants appealed from their respective DWI convictions, one defendant argued that his submission to a blood test was involuntary, another defendant challenged his criminal prosecution for refusing to submit to a breath test, and a third defendant challenged his criminal prosecution for refusing to submit to a blood test. *Id.* at 2172.

{21} In analyzing whether a given type of search is exempt from the warrant requirement the Court assesses "on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 2176 (internal quotation marks and citation omitted); *Riley v. California,* ___ U.S. ___, 134 S. Ct. 2473, 2484 (2014). In *Birchfield*, the Court considered the impact of breath and blood tests on individual

privacy interests. *Birchfield*, ___U.S.___, 136 S. Ct. at 2176-78. The *Birchfield* court determined that blood tests impact individual privacy interests to a significantly greater degree than breath tests. *Id.* at 2178. *Birchfield* recognized that breath tests, which analyze air expelled out of the subject's lungs to determine the BAC, do not implicate significant privacy concerns. *Id.* at 2176-77. *Birchfield* noted that in contrast to breath tests, blood tests, are significantly intrusive because they "require piercing the skin and extract[ing] a part of the subject's body," and leave "in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading." *Id.* at 2178.

{22}    Considering the government's and states' paramount interest in preserving the safety of public highways, the Court acknowledged the " 'carnage' and 'slaughter' caused by drunk drivers." *Id.* at 2178-79.  *Birchfield* emphasized the importance of not only "neutralizing the threat posed by a drunk driver who has already gotten behind the wheel[,]" but also deterring drunk driving "so such individuals make responsible decisions and do not become a threat to others in the first place." *Id.* at 2179. *Birchfield* also noted that the states' interest in the efficient use of resources; would be hindered if a search warrant were required for every BAC test incident to a drunk driving arrest. *Id.* at 2181-82.

{23}    Balancing the slight impact of breath tests on individuals' privacy, and the great need for BAC testing, *Birchfield* determined that warrantless breath tests incident to drunk driving arrests are reasonable under the Fourth Amendment. *Id.* at 2184. "Because breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests," *Birchfield* concluded that breath tests "may be administered as a search incident to a lawful arrest for drunk driving," but blood tests may not. *Id.* at 2185.

{24}    *Birchfield* also rejected the idea that warrantless blood tests can be justified based on the general concept of implied consent laws. *Id.* at 2185-86. The constitutionality of states' implied consent laws was not at issue, and the Court did not address that issue. *Id.* at 2185. However, *Birchfield* did address whether a driver could be criminally liable for refusing to submit to an implied consent blood test. *Id.* *Birchfield* reasoned that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* Applying the Fourth Amendment reasonableness standard, *Birchfield* concluded "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186. In other words, a driver may be deemed to have consented to a warrantless blood test under a state implied

12

consent statute, but the driver may not be subject to a criminal penalty for refusing to submit to such a test. *Id.*

{25} In the present case, because Defendant's DWI charge by alcohol was aggravated based on her refusal of a warrantless blood test, a search which she refused, cannot be justified on the basis of implied consent. *See id.* at 2176. Neither the record nor the briefing in this case indicates that Deputy Rael's interview of Defendant, administration of the FSTs, and the breath test conducted by Deputy Rael failed to satisfy the State's interests in acquiring evidence to enforce its drunk driving laws against Defendant. And the State has not presented any information to suggest that any exception to the warrant requirement would have justified a warrantless search of Defendant's blood. *Cf. McNeely*, ___ U.S. at ___, 133 S. Ct. at 1567. Accordingly, we conclude Defendant was threatened with an unlawful search. We further conclude that Defendant's refusal to submit to the search cannot be the basis for aggravating her DWI sentence. *See Birchfield*, ___U.S.___, 136 S. Ct. at 2186 (reversing the defendant's conviction where the State presented no "case-specific information to suggest that the exigent circumstances exception would have justified a warrantless [blood test]" and where the Court was "[u]nable to see any other basis on which to justify a warrantless test of [the defendant's] blood").

13

**CONCLUSION**

{27}     For the foregoing reasons, we reverse Defendant's conviction of aggravated DWI and remand to the trial court for resentencing on the charge of DWI, impaired to the slightest degree.

{28}     **IT IS SO ORDERED.**


                                 _____

                                 **M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Chief Judge**


_____

**MICHAEL D. BUSTAMANTE, Judge**