Certiorari Denied, October 31, 2017, No. S-1-SC-36695

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMCA-009

Filing Date: September 28, 2017

Docket No. A-1-CA-35013

STATE OF NEW MEXICO,

        Plaintiff-Appellee,

v.

JULIAN STOREY,

        Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Brett R. Loveless, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## OPINION

**BOHNHOFF, Judge.**

**{1}** Julian Storey (Defendant) was arrested in Albuquerque, New Mexico on suspicion of driving under the influence of marijuana. Following a jury trial in Bernalillo County metropolitan court, he was convicted of aggravated driving under the influence of a drug (DUI), possession of drug paraphernalia, and failing to maintain lane. The district court affirmed these convictions. On appeal to this Court, Defendant raises five challenges to the

aggravated DUI conviction: (1) the trial court erred when it denied Defendant's motion to strike three potential jurors for cause, thus denying Defendant a fair trial; (2) there was insufficient evidence to support the jury's finding that Defendant was guilty of aggravated DUI; (3) the trial court erred by denying Defendant's motion for a mistrial due to the prosecutor's comments regarding the legal standard for DUI; (4) NMSA 1978, Section 66-8-102(D)(3) (2016) is unconstitutional because it criminally punishes defendants for refusing to submit to a warrantless blood draw; and (5) on the same constitutional grounds, fundamental error occurred when the prosecutor commented during closing argument on Defendant's refusal to submit to the blood draw. Pursuant to the United States Supreme Court's holding in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016), and following this Court's ruling in *State v. Vargas*, 2017-NMCA-023, ¶ 15, 389 P.3d 1080, *cert. granted*, 2017-NMCERT-___, (No. A-1-CA-33718, Feb. 14, 2017), we conclude that Section 66-8-102(D)(3) is unconstitutional under the facts of this case. Pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, a state cannot criminally punish an individual for refusing to submit to a warrantless blood draw. However, we also conclude that the constitutional proscription announced in *Birchfield* does not extend to the introduction of evidence of, or a prosecutor's comment on, such refusal to consent. Thus, the trial court did not err by allowing the prosecutor to comment during closing argument on Defendant's refusal to submit to a blood draw. We are not persuaded by Defendant's remaining arguments. We thus affirm in part and reverse in part, and remand for entry of judgment and sentence for violation of the underlying DUI offense.

## BACKGROUND

### I.      New Mexico's Impaired Driving Laws

**{2}**      Section 66-8-102(A) generally prohibits driving under the influence of alcohol: "It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." "[U]nder the influence," as that phrase is used in Section 66-8-102(A), means that "as a result of drinking liquor, the driver [is] less able *to the slightest degree*, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety." (DWI). *State v. Neal*, 2008-NMCA-008, ¶ 21, 143 N.M. 341, 176 P.3d 330 (alteration, emphasis added) (internal quotation marks and citation omitted). Section 66-8-102(B) generally prohibits driving under the influence of a drug: "It is unlawful for a person who is under the influence of any drug *to a degree that renders the person incapable of safely driving a vehicle* to drive a vehicle within this state." (Emphasis added.)

**{3}**      The New Mexico Implied Consent Act (the Act), NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015), aids in the enforcement of Section 66-8-102. The Act generally provides that any person who operates a motor vehicle within the state is deemed to have consented to a breath or blood test if he or she is arrested on suspicion of driving under the influence of intoxicating liquor or drugs. Section 66-8-107(A); *State v. Watchman*, 1991-NMCA-010, ¶ 31, 111 N.M. 727, 809 P.2d 641, *overruled in part on other grounds by State v. Hosteen*, 1996-NMCA-084, ¶ 21, 122 N.M. 228, 923 P.2d 595. The subject may refuse to consent to the test, Section 66-8-111(A), but the Act provides sanctions for

refusing: revocation of the subject's driver's license for one year, Section 66-8-111(B), and a mandatory jail sentence if he or she is convicted of the underlying DUI offense, Section 66-8-102(E). That is, Section 66-8-102(D)(3) establishes the offense of aggravated driving while under the influence of intoxicating liquor or drugs (aggravated DUI): "refus[al] to submit to chemical testing, as provided for in [the Act, while,] in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs."[1] *Id.*

## II. Defendant's Arrest

{4}     Deputy Sarah Young of the Bernalillo County Sheriff's Department was on duty during the early morning hours of November 7, 2013. She was traveling westbound on Montano Boulevard in Albuquerque, New Mexico (Montano), in the same direction as a sport utility vehicle (SUV) that was ahead of her and was traveling in the far right lane. The deputy observed the SUV cross over the solid painted lane divider into the right shoulder lane three times. Deputy Young then observed the vehicle move the opposite direction into the far left lane and appear to graze the concrete lane divider. After the SUV turned southbound onto Coors Boulevard, Deputy Young initiated a traffic stop. When she made contact with Defendant, who was the driver of the SUV, the deputy smelled the odor of burnt marijuana coming from the vehicle. Deputy Young then asked Defendant whether there was anything in the vehicle she should be aware of, and Defendant produced a marijuana pipe from the center console. Based on the odor of burnt marijuana, the marijuana pipe, and how Defendant was driving, Deputy Young called dispatch to request a DUI officer. Deputy Johan Jareno responded to the call.

{5}     When Deputy Jareno arrived, he was briefed by Deputy Young and then made contact with Defendant. Deputy Jareno also smelled the odor of burnt marijuana coming from the vehicle, and Defendant admitted to Deputy Jareno that he had smoked marijuana "a couple hours" earlier. Deputy Jareno asked Defendant if he would perform standardized field sobriety tests (FSTs) and Defendant agreed. Defendant followed Deputy Jareno's instructions for the horizontal gaze nystagmus test, but missed the heel-to-toe twice, turned incorrectly, and used his arms for balance during the walk-and-turn test. Defendant also failed to follow Deputy Jareno's instructions during the one-leg stand test, hopping once and failing to look at his foot or keep his hands by his sides.

{6}     Deputy Jareno testified that standardized FSTs help a law enforcement officer assess a driver's ability to operate a motor vehicle safely, because "the tests are divided attention tests that require multitasking, as does driving." FSTs are designed to assess a person's intoxication regardless of the intoxicating substance. Deputy Jareno had training in Advanced Road Impairment Detection and Enforcement, where he learned how to identify

---

[1]"[E]very [s]tate . . . has long had what are termed 'implied consent laws.' These laws impose penalties on motorists who refuse to undergo testing when there is sufficient reason to believe they are violating the [s]tate's drunk-driving laws." *Birchfield*, 136 S. Ct. at 2166; *see, e.g.*, *South Dakota v. Neville*, 459 U.S. 553, 559-60 (1983).

drugs by look, smell, and consistency, and he also received specialized training as a Drug Recognition Examiner.

**{7}** Following completion of the initial FSTs, Deputy Jareno then decided to give Defendant two alternate tests. For the first test, Deputy Jareno asked Defendant to estimate thirty seconds of time. When Defendant performed this exercise, forty-one seconds actually passed. For the second test, Deputy Jareno asked Defendant to recite the alphabet from J to Y, but Defendant was able to recite the alphabet only between J and P. Based on the results from the standardized FSTs and the two alternate tests, Deputy Jareno concluded that Defendant was not able to safely operate a vehicle and arrested him for DUI.

**{8}** For Defendant's part, he testified that "he did not feel intoxicated and thought he was safe to drive." He testified that his truck was "beat up" and that he had "blown out" the suspension, causing the truck to sway between the lanes because the road was "very bumpy." Defendant also testified that he believed his driving was fine and that his vehicle did not strike the barrier. Defendant also denied that the marijuana pipe he turned over to Deputy Young belonged to him.

**{9}** After Defendant's arrest, but while still on the scene, Deputy Jareno read Defendant a scripted advisory statement for implied consent that states:

> You are under arrest for driving under the influence of intoxicating liquor and/or drug[s]. The New Mexico Implied Consent Advisory [sic] requires you to submit to a breath test, a blood test, or both to determine the alcohol or drug content of your blood. After you take one or both of our tests, you will have the right to choose an additional independent test. . . . Do you agree to take our test or tests—yes or no?

Defendant stated that he understood the advisory and he agreed to be tested. Deputy Jareno transported Defendant to a police station where Defendant was administered a breath test. The test showed negative for alcohol. Deputy Jareno then asked Defendant to submit to a blood test and Defendant refused. Deputy Jareno then stated:

> I cannot force you to take our test but if you refuse you will lose your New Mexico driver's license or non-resident operating privilege for up to one year. If you are also found guilty in court of driving while under the influence you may receive a greater sentence because you refused to submit to be tested.

Defendant still refused to submit to a blood test.

## III. District Court Appeal

**{10}** The metropolitan court (trial court) jury found Defendant guilty of possession of drug paraphernalia, failure to maintain traffic lane, and aggravated DUI. The trial court entered

its sentencing order and judgment on July 14, 2014. Defendant appealed his conviction to the district court, asserting error based on the trial court's denial of his motion to strike the three potential jurors for cause, the claimed lack of sufficient evidence to prove failure to maintain traffic lane, the claimed lack of sufficient evidence to prove Defendant was guilty of DUI, and the trial court's denial of his mistrial motion based on the prosecutor's claimed misstatement of the law during closing argument. In a motion to dismiss, the State contended that Defendant had waived any claim of error with respect to the sufficiency of the evidence. In its memorandum opinion entered on July 29, 2015, the district court did not address the State's waiver argument and instead proceeded to address the merits of Defendant's arguments, but ultimately found no reversible error and affirmed the sentencing order. Defendant timely filed his notice of appeal to this Court. We note that the State has not appealed the district court's de facto denial of its motion to dismiss, and thus we do not address the waiver issue.

**ANALYSIS**

**I.     The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Motion to Strike Jurors for Cause**

**{11}**     Defendant's jury selection argument focuses on two members of the venire panel, Baker and Romero, who were not selected to serve on the jury, and one, Lucero, who was selected as a juror.

**{12}**     During voir dire, in response to a question from defense counsel ("How many of you think that if you have used drugs or alcohol, no matter in what amount, in just the slightest amount, that you are not okay to drive?"), Baker stated, "I don't allow drugs of any sort, even one drink is breaking the law." Baker spoke only the one time during voir dire. Defense counsel never followed up with Baker to ascertain whether, notwithstanding his incorrect understanding of the law, he still could follow the court's instructions and decide the case fairly and impartially.

**{13}**     Later during voir dire, defense counsel asked the following question: "Ms. Lucero? Okay. Let's see—how do you feel about . . . the questions regarding whether if you've used any amount of marijuana, whether or not you're safe to drive—do you think that's the case?" Lucero responded, "Yes it is because it's endangering himself and endangering other people." That response was the only time that Lucero spoke during voir dire. Defense counsel did not follow up with Lucero to ascertain whether she could follow the court's instructions and decide the case fairly and impartially.

**{14}**     Defense counsel then asked Romero the following question: "Ms. Romero, I guess the same question to you—what do you think—would somebody who had any amount of marijuana in their system, would they be unable to drive safely?" Romero responded, "Well yeah, they'd be unable to drive because it's illegal to drink and drive." Similar to Baker and Lucero, defense counsel did not follow up with Romero to ascertain whether she could follow the court's instructions and decide the case fairly and impartially. That was the only time she spoke during voir dire.

**{15}**     Outside the presence of the venire panel, defense counsel moved to strike Baker, Lucero, and Romero, as well as another panel member, Pilcher, for cause. As is discussed below, the trial court agreed to strike Pilcher, but otherwise denied the motion. During the course of selecting the six members of the jury, defense counsel used one of Defendant's two peremptory excusals to strike Baker, but accepted Lucero. During the course of selecting an alternate juror, defense counsel exercised Defendant's remaining peremptory challenge on Romero.

**{16}**     Defendant argues that the trial court erred in denying his motion to strike Baker, Lucero, and Romero for cause. Defendant asserts that all three stated that, because marijuana is illegal, a driver who uses any amount cannot drive safely. In response, the State argues that Defendant failed to demonstrate how these three panel members were unwilling or unable to decide the case based on the evidence and the trial court's instructions. The State also points out that, of the three panel members that Defendant moved to strike, only one, Lucero, actually served on the jury.

**{17}**     "Trial courts . . . are given broad discretion in overseeing the voir dire process. . . . The trial court, who is listening first hand to counsel's questions and the panel members' responses, is in the best position to determine whether voir dire has sufficiently exposed any biases that may preclude jurors from acting fairly and impartially." *State v. Martinez*, 2002-NMCA-036, ¶¶ 31, 35, 131 N.M. 746, 42 P.3d 851. "In general, we review the trial court's rulings regarding the selection of jurors for an abuse of discretion because the trial court is in the best position to assess a juror's state of mind, based upon the juror's demeanor and credibility." *State v. Allen*, 2000-NMSC-002, ¶ 83, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). Further, and crucially, "[the d]efendant cannot prevail on appeal unless he demonstrates that the jurors finally selected were biased or prejudiced." *State v. Gardner*, 2003-NMCA-107, ¶ 16, 134 N.M. 294, 76 P.3d 47.

**{18}**     In *State v. Rackley*, 2000-NMCA-027, 128 N.M. 761, 998 P.2d 1212, the defendant was convicted of multiple crimes in connection with a robbery. On appeal, he challenged the trial court's refusal to excuse for cause three members of the venire panel based on the fact that, during voir dire, two of the panel members commented generally about the defendant's decision to not testify and the third commented about the defendant's status as a convicted felon. *Id.* ¶¶ 10, 12. This Court noted that these comments implicated rules regarding the presumption of innocence, the privilege not to testify, and the rules of evidence limiting character and propensity evidence. *Id.* ¶¶ 11-12. This Court then observed that

> [the d]efendant is trying to convert a juror's admission of a layperson's natural response into prima facie evidence of impermissible bias. Evidentiary rules restricting the use of propensity evidence reflect a judgment that the probative value of such evidence is outweighed by unfair prejudice, confusion, and waste of time. Although these rules and the policies they represent may be known to and accepted by lawyers, they are not necessarily familiar to non-lawyers, who routinely rely on information about a person's past behavior in making social and business judgments. The fact that a juror is unaware at the outset of a criminal trial of the complicated scheme

regulating the use of collateral offenses/character evidence is not at all surprising and should not, of itself, give rise to a presumption that a juror is incapable of following the trial court's instructions on the proper uses of evidence of collateral offenses. Indeed, the very purpose of instructions is to educate jurors about the applicable law.

*Id.* ¶ 12 (citations omitted). This Court concluded that, with respect to all three panel members, the defendant failed to demonstrate that any of the three panel members was "biased or otherwise incapable of deciding [the] case on the facts established at trial and the trial court's instructions on the law." *Id.*

**{19}** Defendant's jury selection argument herein can be resolved on similar grounds. The three panel members in question simply expressed their layperson views about the physiological effects of marijuana and/or the law governing driving under the influence of drugs. Defense counsel did not follow up on those questions and inquire whether they could and would follow the trial court's instructions on the law and decide the case on the basis of the testimony and exhibits that were introduced into evidence. In the absence of that information, we decline to speculate about whether any of the three members would not have obeyed the trial court's instructions and instead would have decided the case on the basis of their layperson views or any actual biases. We therefore conclude that the trial court did not abuse its discretion during jury selection.

## II. Section 66-8-102(D)(3) Is Unconstitutional as Applied to a Motorist's Refusal to Submit to a Blood Test

**{20}** Citing *Birchfield*, Defendant argues that in aggravating the sanction for driving under the influence of marijuana based on his refusal to consent to a blood test, the State is punishing him for invoking his constitutional right to be free from warrantless searches of his person. He urges that the aggravated DUI charge therefore must be reversed.

### A. Standard of Review

**{21}** "The legality of a search . . . ultimately turns on the question of reasonableness." *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. While this "inquiry is necessarily fact-based it compels a careful balancing of constitutional values, which extends beyond fact-finding," and is therefore subject to de novo review. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted). The constitutionality of a statute is reviewed de novo as well. *See Rodriquez v. Brand West Dairy*, 2016-NMSC-029, ¶ 10, 378 P.3d 13.

### B. Preservation of Error

**{22}** The State contends that, because he did not raise it below, Defendant waived his Fourth Amendment argument. "To preserve an issue for review it must appear that a ruling or decision by the trial court was fairly invoked." Rule 12-321(A) NMRA. As discussed below, however, the grounds for the constitutional argument were not apparent until June

23, 2016, when the United States Supreme Court announced its opinion in *Birchfield*. "[W]here a decision by the district court was not fairly invoked on a particular issue, an appellate court may still consider jurisdictional questions, issues of general public interest, or matters involving fundamental error or fundamental rights of a party." *Vargas*, 2017-NMCA-023, ¶ 15 (internal quotation marks and citation omitted). Here, where Defendant's trial and district court appeal occurred well before the legal ground became known, "we will exercise our discretion to consider whether compelling [the d]efendant to submit to a blood test constitutes an illegal search under the Fourth Amendment because freedom from illegal search and seizure is a fundamental right that may, in particular circumstances, come within the exception to the preservation requirement." *Id.* (internal quotation marks and citation omitted).

## C.  Fourth Amendment Principles Applicable to Blood Testing for Impaired Driving

**{23}**  The Fourth Amendment to the United States Constitution provides in pertinent part that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. The Fourth Amendment expresses a clear preference that law enforcement should obtain a search warrant prior to conducting a search. *See State v. Williamson*, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d. 376. "Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions." *Rowell*, 2008-NMSC-041, ¶ 10 (emphasis, internal quotation marks, and citation omitted); *accord Missouri v. McNeely*, 569 U.S. ___,133 S. Ct. 1552, 1558 (2013) (holding that a warrantless search is reasonable only if it falls within a recognized exception). Courts have recognized exceptions for, among others, searches incident to arrests, exigent circumstances, and searches where the subject consents. *See Rowell*, 2008-NMSC-041 ¶ 13 (noting that an exception permits search of an arrestee, following a lawful arrest, to prevent him or her from obtaining a weapon or destroying evidence); *State v. Gomez*, 1997-NMSC-006, ¶¶ 36-44, 122 N.M. 777, 932 P.2d 1 (stating that an exception allows search "to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence" (internal quotation marks and citation omitted)); *State v. Garnenez*, 2015-NMCA-022, ¶ 5, 344 P.3d 1054 ("Consent and arrest are exceptions to the warrant requirement.").

**{24}**  Drawing an individual's breath or blood for purposes of testing for alcohol content constitutes a search within the meaning of the Fourth Amendment. *Birchfield*, 136 S. Ct. at 2174; *State v. Richerson*, 1975-NMCA-027, ¶ 23, 87 N.M. 437, 535 P.2d 644. On several occasions over the past half century, the United States Supreme Court has applied the Fourth Amendment to breath and blood alcohol testing regimens that states have established to combat the problem of drunk driving. *See Schmerber v. California*, 384 U.S. 757, 771-72 (1966) (concluding under the circumstances of that case that a warrantless blood alcohol test (BAT) was justified under the exigent circumstances exception and therefore not an unreasonable search); *see also McNeely*, 133 S. Ct. at 1557 (clarifying *Schmerber* and

holding that the exigency exception for warrantless blood testing must be applied on a case-by-case basis, reasoning that the natural metabolism and thus dissipation of alcohol in the bloodstream does not, by itself, justify a per se rule); *cf. Neville*, 459 U.S. at 559 (answering in the negative the question of whether a South Dakota implied consent statute, which expressly authorized admission into evidence of a defendant's refusal to consent to a BAT when arrested on suspicion of drunk driving, violated the United States Constitution's Fifth Amendment's privilege against self-incrimination).

## D.    *Birchfield* **and** *Vargas*

**{25}**    *Birchfield* considered whether the search incident to arrest exception was applicable to both breath and blood alcohol testing. After reviewing the exception's history, the United States Supreme Court began its analysis by observing that, when there is a lack of guidance from the founding era, "we generally determine whether to exempt [on the basis of the search incident to arrest doctrine] a given type of search from the warrant requirement by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." 136 S. Ct. at 2176 (internal quotation marks and citation omitted). The Court reasoned that while breath tests do not implicate significant privacy concerns, blood tests are a different matter because "[t]hey require piercing the skin and extract a part of the subject's body . . . the process is not one [many people] relish. It is significantly more intrusive than blowing into a tube." *Id.* at 2178 (internal quotation marks and citation omitted). Blood tests are also different from breath tests because a blood test "places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple [blood alcohol content (BAC)] reading." *Id.* at 2178.

**{26}**    The Court then assessed the government's interest in BAT. The Court acknowledged that laws that make it a crime to refuse to submit to alcohol testing via breath and blood tests "serve a very important function." *Id.* at 2179. However, because the search incident to arrest doctrine is categorical, as opposed to the exigency exception to the warrant requirement, which, *McNeely* teaches, requires a case-by-case analysis, the Fourth Amendment does not permit warrantless blood draws for alcohol testing as searches incident to arrest: "[b]lood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." *Birchfield*, 136 S. Ct. at 2183-84. Warrantless breath alcohol tests, on the other hand, are constitutional as searches incident to arrest. *See id.* at 2184.

**{27}**    Lastly, the *Birchfield* Court considered but rejected the argument that warrantless blood draws could be justified under the Fourth Amendment's consent exception: "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

**{28}**    In *Vargas*, this Court applied *Birchfield*'s holding to a conviction for aggravated DWI of a motorist who refused to consent to a blood test after being arrested for driving under the influence of alcohol: "[The d]efendant's refusal to submit to the search cannot be the basis for aggravating [the DWI] sentence." *Vargas*, 2017-NMCA-023, ¶ 25. We reversed

the aggravated DWI conviction but remanded the case to the trial court for resentencing on the underlying DWI offense.

**E.     Applying *Birchfield* to Defendant's Conviction for Aggravated Driving Under the Influence of Marijuana**

**{29}**     Notwithstanding its reliance on the availability of breath alcohol testing as one of the key reasons for its conclusion that blood alcohol testing did not merit a per se search incident to arrest exception to the warrant requirement, the Court in *Birchfield* declined to recognize such an exception for warrantless blood testing where a driver is arrested on suspicion of driving while under the influence of substances for which a breath test is not available:

> One advantage of blood tests is their ability to detect not just alcohol but also other substances that can impair a driver's ability to operate a car safely. A breath test cannot do this, but police have other measures at their disposal when they have reason to believe that a motorist may be under the influence of some other substance (for example, if a breath test indicates that a clearly impaired motorist has little if any alcohol in his blood). Nothing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not.

136 S. Ct. at 2184 (citation omitted). Thus, the United States Supreme Court appears to have foreclosed any argument that a warrantless blood test for a drug other than alcohol, such as marijuana, can be justified under the search incident to arrest exception.

**{30}**     The State argues that *Birchfield*'s holding should not be applied retroactively, but the rule is to the contrary. "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final[.]" *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (eliminating retroactive application exception "for cases in which the new rule constitutes a 'clear break' with the past"); *see United States v. Johnson*, 457 U.S. 537, 562 (1982) (holding that "a decision of [the United State Supreme] Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered"); *State v. McCumber*, 893 N.W.2d 411, 417 (Neb. 2017) (noting that "with *Birchfield* pronouncing a new constitutional rule, it applies retroactively to any case on direct appeal").

**{31}**     The State also argues that, because Defendant did not assert the unconstitutionality of the aggravated DUI charge until after his conviction and pending the appeal, the State had "no occasion to present evidence or argument below as to whether concerns over the loss of evidence due to the metabolization of marijuana, exigent circumstances generally, or some other case-specific information could have provided an alternative basis on which to justify a warrantless test of [Defendant's] blood." Under the Act, a law enforcement agency may not, without a warrant, force a driver to undergo a blood test. *See* § 66-8-111(A). In other words, under the Act, the exigent circumstances exception is not available to New Mexico law enforcement to obtain a blood test where a driver is arrested for DUI and refuses to

consent to the test. Further, law enforcement generally may not seek a warrant for a blood test of a motorist who is arrested for driving under the influence of alcohol or other drug, the only exceptions being where the driver has either caused death or great bodily harm, or committed a felony and chemical tests will produce material evidence in the felony prosecution. *See id.* Thus, it is a moot point whether in this case the State could establish exigent circumstances to justify an involuntary blood test of Defendant.

**{32}** As stated above, Section 66-8-102(D)(3) provides that aggravated DUI consists of "refusing to submit to chemical testing, as provided for in [the Act], and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs." The offense thus consists of the underlying offense of driving under the influence of alcohol or another drug, plus refusal to consent to a blood test. Section 66-8-102(E) imposes criminal penalties for the act of refusal, in addition to those imposed for the underlying offense: for a first aggravated DUI offense, "the offender shall be sentenced to not less than forty-eight consecutive hours in jail." *Id.* In light of *Birchfield*, and consistent with *Vargas*, we hold that Section 66-8-102(D)(3) is unconstitutional to the extent violation of it is predicated on refusal to consent to a blood draw to test for the presence of any drug in the defendant's blood. We conclude that *Birchfield*'s holding—the constitution does not support an enhanced criminal penalty based upon a defendant's refusal to consent to a blood test for the presence of alcohol—must be extended to any enhanced criminal penalty for a defendant's refusal to consent to a blood test for the presence of other drugs, in this case marijuana. Defendant herein cannot be criminally punished for his refusal to submit to a blood test, and we therefore reverse his conviction for aggravated DUI.

### III.  *Birchfield* Does Not Invalidate the Introduction of Evidence of a Defendant's Refusal to Submit to a Blood Chemical Test

**{33}** During his opening statement, defense counsel asserted, "They're not going to be able to show you that he has any actual marijuana in his system because aside from this pipe that [Defendant] turned over to them, they really have no evidence that he had been using marijuana while driving or that he was under the influence of marijuana while driving. They don't have a blood test, [Defendant] refused to take one, but they have no actual proof that he ha[d] marijuana in his system, and this isn't necessarily—well, we're gonna see some evidence about, perhaps, why he refused and we think that when you see it, you will conclude that he's not refusing in order to evade detection of drugs in his system."

**{34}** During his initial closing argument, the prosecutor commented on Defendant's refusal: "[D]efendant refused because he was afraid of the results." Defense counsel immediately objected, and the parties approached the bench for a side bar conference. Defense counsel argued that the prosecutor's statement called for speculation. Both the prosecutor and the judge pointed out that the prosecutor's statement concerned consciousness of guilt, and the judge overruled the objection. The prosecutor continued, stating: "It was [D]efendant's fear that drove him to refuse that [testing]." Later, at the end of his initial closing argument, the prosecutor stated:

It's his admissions, the odor, his performance on the field sobriety tests, his poor driving, his refusal. He's under the influence. [D]efendant believes he's sober but the evidence points otherwise. That's his belief, an individual who admittedly was smoking marijuana, and that can play into your credibility assessment of him. I don't believe he was being dishonest. I believe he was impaired. The State asks you to find [D]efendant guilty.

Defense counsel did not object to this statement.

**{35}** During his rebuttal following defense counsel's closing argument, the prosecutor stated, "He was honest, so there should be some other reason as to why he would refuse the test. . . . Ladies and Gentlemen, yes, he was honest with you, and handed the pipe over, admitted to smoking—until he was arrested for [DUI]. . . . Until there's the very real probability that the blood needle goes into his arm and he gets tested and there is no doubt that he is under the influence." Defense counsel then objected, and the parties approached the bench for a sidebar conference. Defense moved for a mistrial. The trial judge denied the motion, but stated, "I am concerned about saying sticking the needle in his arm that would have proven beyond—that would have proven he was guilty, because he can't prove that, that's purely speculation, so I'll sustain the objection to that, and I think you need to withdraw that statement." The prosecutor then continued his rebuttal, stating, "Ladies and Gentlemen, counsel has pointed out that I made a bit of a misstatement there. Just because he had his blood drawn wouldn't have removed all doubt. The State still would have to produce that evidence in court. But [D]efendant was afraid of it." Defense counsel did not object to this statement.

**{36}** Based on *Birchfield*, and reasoning that he should not be penalized for asserting his Fourth Amendment right, Defendant urges that the trial court also erred in allowing the prosecutor to argue during final argument that Defendant's refusal to consent to a blood test was evidence of consciousness of his guilt. For the same reasons this Court considers Defendant's constitutional challenge to his aggravated DUI conviction notwithstanding his failure to preserve the claimed error, we also will consider this argument. Therefore, it is not necessary to undertake the plain or fundamental error analysis that Defendant pursues. However, we reject the substance of the argument and determine that the trial court did not err in allowing the comment.

## A.  *Birchfield* **and Its Predecessors**

**{37}** As mentioned above, *Neville* addressed the constitutionality of a South Dakota law that expressly permitted the introduction of evidence of a motorist's refusal to consent to a BAT. South Dakota courts had concluded that the statute violated the federal constitutional privilege against self-incrimination on the theory that introducing evidence of refusal to consent to a blood test was analogous to introducing evidence of a criminal defendant's refusal to testify. The United States Supreme Court disagreed. The Court noted that most state courts that had considered the question had concluded that refusal to submit is a physical act rather than a communication, and therefore not encompassed by the privilege. Instead, "evidence of refusal to take a potentially incriminating test is similar to other

circumstantial evidence of consciousness of guilt, such as escape from custody and suppression of evidence." 459 U.S. at 560-61. The Court ultimately grounded its ruling, however, on the alternative rationale that, because a defendant has a choice in taking or refusing to take the test, the blood test is not coerced, and therefore the refusal is not protected by the privilege. *See id.* at 561-64. It follows, therefore, that introduction of evidence of such refusal does not violate the Fifth Amendment privilege against self-incrimination.

**{38}** The Court did not address in *Neville* whether the admission of evidence of refusal to consent to a blood test infringed on a defendant's Fourth Amendment right against unreasonable searches. Since *Neville*, however, the United States Supreme Court has spoken to that question twice. First, the court addressed the question in *McNeely* in connection with its holding that the natural metabolization of alcohol in the bloodstream does not constitute a per se exigency that justifies non-consensual, warrantless blood testing. In response to the state's argument that its compelling interest in combating drunk driving justified a per se exigency exception, the Court noted with approval the availability of other means of addressing the problem, including introduction of evidence of refusal to consent to a BAT:

> States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 [s]tates have adopted implied . . . consent to BAC testing if [motorists] are arrested or otherwise detained on suspicion of a drunk-driving offense. Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, *and most [s]tates allow the motorist's refusal to take a BAC test to be used as evidence against [them] in a subsequent criminal prosecution.*

133 S. Ct. at 1566 (emphasis added) (internal quotation marks and citation omitted).

**{39}** Second, in *Birchfield*, and relying in part on the aforementioned language in *McNeely*, the United States Supreme Court spoke to the question in the context of distinguishing between criminalizing the refusal to take a BAT (which it deemed unconstitutional as a proposed exception under the consent doctrine) and using that refusal as evidence of consciousness of guilt on the underlying driving while intoxicated offense (which it signaled is constitutional):

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties *and evidentiary consequences* on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them. It is another matter, however, for a [s]tate not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Birchfield*, 136 S. Ct. at 2185 (emphasis added) (internal quotation marks and citations omitted);[2] *see also Dill v. Texas*, No. 05-15-01204-CR, 2017 WL 105073, at *1-2 (Tex. App., Jan. 11, 2017) (not designated for publication) (rejecting, based on *McNeely* and *Birchfield*, the defendant's DUI argument that admission into evidence of her refusal to consent to blood test violated her Fourth Amendment rights).

## B.  New Mexico Precedent

**{40}**  Independent of the United States Supreme Court's application of the Fourth Amendment, New Mexico courts have not identified any constitutional or other legal obstacles to the introduction of evidence of, or prosecutor comment on, a defendant's refusal to take a blood test for alcohol or other drugs. In *McKay v. Davis*, 1982-NMSC-122, 99 N.M. 29, 653 P.2d 860, the defendant was arrested for driving while under the influence of alcohol. He refused to consent to a breath alcohol test. At a pre-trial hearing, the metropolitan court advised that it would permit the introduction of evidence of, and comment on, the defendant's refusal to consent to the test. The defendant successfully sought a writ from the district court, prohibiting the metropolitan court from allowing evidence and comments regarding the defendants's refusal to consent to testing. On appeal, our Supreme Court reversed. Citing *Schmerber* and decisions from other states, the Court held that "evidence of a defendant's refusal to take a breath-alcohol test is admissible under the . . . Act." *McKay*, 1982-NMSC-122, ¶ 6. Foreshadowing *Neville*, the Court then ruled that the defendant's refusal was not protected as a privileged communication, *McKay*, 1982-NMSC-122, ¶ 7, and that the refusal reflected consciousness of guilt that was relevant and thus admissible pursuant to Rule 11-401 NMRA. *McKay*, 1982-NMSC-122, ¶¶ 14-16. Since 1982, New Mexico courts repeatedly have relied on evidence of refusal to consent to breath and blood alcohol tests to support convictions for driving while under the influence of alcohol. *See, e.g.*, *State v. Marquez*, 2009-NMSC-055, 147 N.M. 386, 223 P.3d 931, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110; *State v. Caudillo*, 2003-NMCA-042, 133 N.M. 468, 64 P.3d 495. The logic underlying these decisions is equally applicable to Defendant's prosecution for, and conviction of, driving while under the influence of marijuana.

**{41}**  We conclude on the basis of the foregoing federal and New Mexico precedent that the prosecutor's commentary on Defendant's refusal to consent to a blood test did not violate his constitutional rights under the Fourth Amendment.

## C.  Defendant Opened the Door

**{42}**  In his opening statement, defense counsel raised the issue of Defendant's refusal to consent to the blood test. However, Defendant did not present any evidence at trial to follow-

---

[2]Based on this same qualifying language, *Birchfield* does not call into question the Act's provision for revocation of one's driver's license as a civil penalty for refusal to consent to a blood test.

up with his opening statement about his refusal to consent. In both his initial and his rebuttal closing arguments, the prosecutor commented on Defendant's refusal, urging that, "It was [D]efendant's fear that drove him to refuse that [testing]," and "[D]efendant was afraid of it."

**{43}** *Birchfield* does not prohibit the introduction of evidence of, and commentary on, evidence establishing a defendant's refusal to take a blood test. The trial court therefore did not err, fundamentally or otherwise, in allowing the prosecutor's comments during closing argument regarding Defendant's refusal to take a blood test. But we also cannot ignore the defense counsel's comment to the jury during opening statements—that there was some explanation other than consciousness of guilt for Defendant's refusal to consent to a blood test. A court is "least likely to find [fundamental] error where the defense has opened the door to the prosecutor's comments by its own argument or reference to facts not in evidence." *State v. Sosa*, 2009-NMSC-056, ¶ 33, 147 N.M. 351, 223 P.3d 348 (internal quotation marks and citation omitted); *cf. State v. Smith*, 2001-NMSC-004, ¶ 5, 130 N.M. 117, 19 P.3d 254 (noting, in a murder trial, that defense counsel stated during opening that the defendant remained in the vehicle and did not participate in the killing; declining to reverse conviction based on the prosecutor's comment on lack of testimony to bear out counsel's representation, since the defense invited the argument). "That the prosecutor can refer to the defendant's failure to testify if the door is opened by the defense, is well supported by case law." *State v. Ruffino*, 1980-NMSC-072, ¶ 9, 94 N.M. 500, 612 P.2d 1311. Defense counsel's comment on Defendant's refusal to consent in his opening statement constitutes independent grounds for rejecting Defendant's complaint about the prosecutor's comments during closing argument.

## IV. Sufficient Evidence Supported Defendant's Conviction for Aggravated DUI

**{44}** Defendant contends that the evidence presented at trial was insufficient to establish each of the elements of aggravated DUI beyond a reasonable doubt. Defendant maintains that, while he wasn't driving "perfectly," the fact that Deputy Young followed him for two miles indicated that he was capable of driving safely, and that his performance on the FSTs was "quite good[.]"

**{45}** "The test to determine the sufficiency of evidence in New Mexico is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 53, 345 P.3d 1056 (alteration, omission, internal quotation marks, and citation omitted). "[T]his test involves two separate parts. First, a reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. Second, an appellate court determines whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Graham*, 2005-NMSC-004, ¶ 6, 137 N.M. 197, 109 P.3d 285 (alteration, emphases, internal quotation marks, and citations omitted)."[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v Salgado*, 1999-NMSC-008, ¶ 25, 126

N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). "[W]hen there is a conflict in the testimony, we defer to the trier of fact." *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33. Thus, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{46}**     Section 66-8-102(B) provides that, "[i]t is unlawful for a person who is under the influence of any drug to a degree that renders the person incapable of safely driving a vehicle to drive a vehicle within this state." Section 66-8-102(D)(3) provides that, "[a]ggravated driving while under the influence of intoxicating liquor or drugs [includes a driver's refusal] to submit to chemical testing, as provided for in [the] Act, and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs." Substantial evidence supported all of the elements of aggravated DUI, and thus, DUI as well.

**{47}**     First, the State presented substantial evidence that Defendant was under the influence of a drug. Both Deputy Young and Deputy Jareno smelled burnt marijuana emitting from Defendant's vehicle. Defendant produced a marijuana pipe from his vehicle and gave it to Deputy Young. Defendant admitted to Deputy Jareno that he had smoked marijuana, and the jury was free to reject his claim that he had done so a "couple hours" before operating his vehicle and that the pipe belonged to someone else.

**{48}**     Second, the State presented substantial evidence that Defendant was incapable of safely driving a vehicle. Deputy Young followed Defendant and observed that he could not maintain his lane of traffic on Montano, swerving multiple times onto the right shoulder and then to the left and possibly grazing the concrete lane divider. Defendant failed the standardized FSTs. The FSTs, as well as Defendant's additional testimony that mechanical problems and the "bumpiness" of Montano caused his vehicle to swerve, all address the credibility and weight of the State's evidence, factual issues that are left to the jury to resolve. *See Rojo*, 1999-NMSC-001, ¶ 19 (recognizing that under the proper standard of review, appellate courts cannot apply the conflicting evidence offered by a defendant that might have supported an acquittal).

**{49}**     Regarding the third and fourth elements of DUI, Defendant did not dispute that he was operating his vehicle in New Mexico and that he refused to consent to take a blood test. Thus, the State presented substantial evidence at trial to support the jury verdict of guilt beyond a reasonable doubt with respect to each element of aggravated DUI. While we have concluded that Defendant's conviction of the aggravated DUI was unconstitutional under United States Supreme Court precedent and therefore must be reversed, it nevertheless follows that sufficient evidence would support his conviction of the lesser DUI charge, which Defendant in fact argues in his brief in chief.

**V.     The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Motion for Mistrial Based on the Prosecutor's Comments About the Legal Standard for Driving Under the Influence of Drugs**

**{50}**  Lastly, Defendant contends that the prosecutor's comments during jury selection and final argument about the legal standard for driving under the influence of drugs were inaccurate and for that reason the trial court should have declared a mistrial and granted him a new trial.

**{51}**  "Since the granting of a mistrial is discretionary with the trial court, we will not disturb the decision on appeal absent an abuse of discretion." *State v. Sutphin*, 1988-NMSC-031, ¶ 18, 107 N.M. 126, 753 P.2d 1314. "Moreover, the power to declare a mistrial should be exercised with the greatest caution." *Id.* "The trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision." *Id.* (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.*

**A.  Venire Panel Member Pilcher's and the Prosecutor's Comments About the Legal Standard for DUI During Jury Selection**

**{52}**  During voir dire, and in response to the same general question that defense counsel asked other panel members about whether the use of any amount of alcohol or marijuana would impair one's ability to drive, Pilcher gave the following extended response:

> [W]ell, according to as far as alcohol is concerned, the law states as to [0.08] percent [0.16] percent . . . alcohol in your bloodstream, that that is automatic infraction. It also says that even if you do not have that level of alcohol in your blood, that it is by level of "impairment." So the level of impairment is really what they go on. It's not, even if you are under the legal amount, if you cannot drive safely, then you shouldn't be driving. Um, after that it goes for alcohol and tobacco—or not tobacco—but, . . . marijuana or any other impairing substances, even medicated, prescribed drugs . . . affect how you can function behind the wheel of a car. And if you have anything that impairs your ability to drive, you shouldn't be driving. And that's different for different people. Some people can probably down a couple of beers and be functioning behind the wheel of a car, but other people probably have half a beer and not be able to function. So really it's level of function and then whatever the legal standard is of . . . allowed substance in the bloodstream.
>
> . . . .
>
> I believe that no one should be drinking or doing alcohol or drugs anyway, but that's—if it's legal, then they can do it. But, I don't believe if they are under the influence . . . that they should be driving.
>
> . . . .
>
> [To determine whether somebody is unable to drive,] I would need to know . . . how much alcohol is in their bloodstream and I would need to know if

they have passed or failed the . . . sobriety tests—the coordination. So if the officer is of [the opinion] that they had passed within satisfactory measures, then I would be okay with that. But if they— had shown that they had not passed the . . . coordination the other tests that the officer's conduct, then as far as I'm concerned, he's impaired.

**{53}** Following completion of voir dire, and while the trial court and counsel were selecting the jury but outside the presence of the venire panel, the prosecutor made the following comment about Pilcher: "As far as a non-attorney juror, I think that Mr. Pilcher has most accurately stated what the standard is for driving while intoxicated out of any individual I've ever run across. This is an individual who knows the law and accurately recited it to the court. He doesn't drink. He doesn't use drugs. But he's also said he will follow the law and he has to find impairment in order to convict and this is an individual who actually knows the law." The prosecutor continued, "And Your Honor, regarding the statement of law, there is actually case law and if the court wants me to go get it right now, I will, that says driving while impaired to the slightest degree is exactly the same as driving while incapable of operating safely. The Court of Appeals has decided that that language is basically interchangeable and means the same thing." The trial court ultimately struck Mr. Pilcher for cause.

## B.     The Prosecutor's Comments During Closing Argument on the Legal Standard for DUI

**{54}** During the State's closing argument, the prosecutor distinguished the correct standard for DUI with drugs (incapable of safely driving a vehicle (Section 66-8-102(B))), from the standard for DUI with alcohol (impairment to the slightest degree (Section 66-8-102(A); UJI 14-4501 NMRA)). *See generally State v. Gurule*, 2011-NMCA- 042, ¶ 7, 149 N.M. 599, 252 P.3d 823. The prosecutor then stated, "Any impairment by a drug renders you incapable of operating a vehicle[.]" Defense counsel immediately objected and moved for a mistrial. The trial judge sustained the objection, characterizing the prosecutor's statement as "a misstatement of the law" and telling the prosecutor to rephrase his statement, but denied the mistrial motion. The prosecutor suggested rephrasing to say "any intoxicating drug," although it is unclear what exactly the prosecutor planned to say, and the trial judge added "may impair." The prosecutor then continued with closing argument by stating, "Defendant was impaired by marijuana, and there's plenty of evidence to support that. And any impairment, the smallest impairment by an intoxicating drug makes you unsafe. Half a second difference is unsafe. Six seconds, six seconds is way unsafe. Not even noticing that you've grazed a barrier because you're high is unsafe." Defense counsel did not object to this rephrasing.

## C.     The Trial Court Did Not Abuse Its Discretion in Denying a Mistrial

**{55}** Defendant insists that the trial court "abused its discretion in refusing to grant a mistrial in the face of the prosecution's continuing efforts to mislead the jury with misstatement and misapplication of the law." We disagree.

**{56}** First, the prosecutor's comments during jury selection were made to the trial court out of the presence of the venire panel. Whether or not the prosecutor's characterization of the law was incorrect, Defendant cannot claim any resulting prejudice.

**{57}** Second, after the prosecutor stated in closing argument that, "Any impairment by a drug renders you incapable of operating a vehicle," the trial court sustained defense counsel's objection, characterized the prosecutor's statement as "a misstatement of the law" and told the prosecutor to rephrase his statement. We cannot say that these actions by the trial court, together with the definition of the offense contained in the instructions that the jury ultimately received and to which Defendant does not object, did not eliminate any prejudice that Defendant otherwise might have suffered.

**{58}** Further, following the trial court's instruction to rephrase his statement, the prosecutor stated: "[D]efendant was impaired by marijuana, and there's plenty of evidence to support that. And *any impairment, the smallest impairment by an intoxicating drug makes you unsafe*. Half a second difference is unsafe. Six seconds, six seconds is way unsafe. Not even noticing that you've grazed a barrier because you're high is unsafe." Defense counsel did not object to this rephrasing.

**{59}** The emphasized language essentially repeats the prosecutor's previous misstatement of the law. But he then blunted any impact of the error by equating "impairment" to the evidence of Defendant's unsafe driving as opposed to his mental state. We note as well that, prior to making this comment, the prosecutor himself had articulated the difference in the legal standards for driving under the influence of alcohol versus drugs. Consequently, we view the error as harmless under the circumstances. But in any event, defense counsel failed to object, and therefore waived the error.[3]

**{60}** Third, Defendant suggests that the lengthy statement of venire panel member Pilcher had already tainted the jury's collective thinking and predisposed them to apply an incorrect legal standard for establishing driving under the influence of a drug. This amounts to speculation. There is no evidence that the jury members did not follow the trial court's instructions regarding this standard and that the jury generally must follow its instructions. The trial court is given, and must exercise, considerable discretion in evaluating the propriety of argument and in curing any alleged defects. The trial court denied Defendant's motion for new trial, stating that the prosecutor's comments had not deprived Defendant of a fair trial. "We believe that the court acted within the proper bounds of its discretion, and we will not reverse a decision denying a new trial on such a record." *State v. Sellers*, 1994-NMCA-053, ¶ 31, 117 N.M. 644, 875 P.2d 400. Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Defendant's motion for mistrial.

**CONCLUSION**

---

[3]Defendant does not contend that the prosecutor's second statement about the applicable legal standard rose to the level of fundamental error, and therefore we do not engage in that analysis. *See Sosa*, 2009-NMSC-056, ¶ 26.

**{61}** This Court is keenly aware of the "grisly toll," *see Birchfield*, 136 S. Ct. at 2166, that drunk drivers take on our state's roads. The risk to society will only be exacerbated if individuals also get behind the wheel of a vehicle after they have consumed marijuana, a prospect that could occur more frequently in the future if trends toward the legalization of marijuana around the country continue. While *Birchfield* has taken away one of the tools—aggravation of the crime and punishment for refusing to consent to a blood test—that our Legislature has provided courts to use to address this serious problem, as we explain above, evidence of such refusal still may be introduced into evidence and commented on during trial of the underlying driving under the influence offense. *Birchfield* also does not foreclose the Legislature from authorizing law enforcement to obtain a warrant when a motorist refuses to consent to a blood test or seeking to obtain a warrantless blood test upon a showing of exigent circumstances. It is the province of the Legislature to consider these options. *See, e.g.*, H.B. 129, 53rd Leg., 1st Sess. (N.M. 2017), *available at* http://www.nmlegis.gov/Legislation/Legislation?Chamber=H&LegType=B&LegNo=129 &year=17 (proposing amendments to Section 66-8-107 and Section 66-8-111, to authorize warrantless blood tests where exigent circumstances exist and to broaden the authorization for issuance of a warrant where there is probable cause to believe that the motorist is under the influence of alcohol or a controlled substance).

**{62}** We reverse Defendant's conviction for the aggravated portion of his DUI and affirm his conviction for DUI without any aggravation resulting from his refusal to submit to a blood test. We otherwise affirm Defendant's remaining convictions, and remand to the metropolitan court for entry of judgment and sentencing consistent with this opinion.

**{63}** **IT IS SO ORDERED.**

_____
**HENRY M. BOHNHOFF, Judge**

**I CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

**ZAMORA, Judge (specially concurring).**

**{64}** I concur in the majority opinion but write separately to express my concerns with inconsistencies in our conclusions in Sections II and III of the majority's analysis. Majority Op. ¶¶ 20-41. With the advent of *Birchfield*, these conclusions generate inconsistencies. 136 S. Ct. 2160. While on one hand we are concluding that Defendant has the Fourth Amendment right to refuse to comply with a warrantless blood test, Majority Op. ¶¶ 31-32, it appears that on the other hand we are taking that right away by using Defendant's refusal as evidence of consciousness of guilt. Majority Op. ¶ 41. Another source of inconsistency arises from our conclusion that Defendant cannot be charged criminally for refusal to comply with a warrantless blood test, Majority Op. ¶ 32, but yet the refusal may be used against him to support a conviction for driving while under the influence of drugs. Majority Op. ¶¶ 40-

41.

**{65}**    While the majority cites to federal and state precedent in support of the use of Defendant's refusal to consent to a blood test to prove his consciousness of guilt, I did not see a principled analysis that resolves these inconsistencies. Nonetheless, our courts have spoken. *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305 ("Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law."). *Birchfield*, *Vargas*, and now this case have laid the ground work that may require a look to the New Mexico Constitution, Article II, Section 10 for solutions to these inconsistencies.

                                          _____

                                           **M. MONICA ZAMORA, Judge**